FIRST SOUTHERN FEDERAL SAVINGS & LOAN ASSOCIATION OF MOBILE, ALABAMA, Plaintiff-Appellant,

v.

FIRST SOUTHERN SAVINGS AND LOAN ASSOCIATION OF JACKSON COUNTY, MISSISSIPPI, Defendant-Appellee.

No. 79–1831
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 20, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Paul J. Delcambre, Jr., Frederick J. Mannino, Biloxi, Miss., for plaintiff-appellant.

Russell Lachaussee, Karl Wiesenburg, Pascagoula, Miss., for defendant-appellee.

Before CHARLES CLARK, VANCE and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

Appellant, an Alabama savings and loan association, alleges that appellee, a Mississippi savings association, has adopted and used a confusingly similar name. The district court found no substantial likelihood of confusion. We affirm.

I.

Appellant, federally chartered in the 1930's, adopted its present name, First Southern Federal Savings & Loan Association of Mobile, Alabama (First Southern Federal of Mobile) in 1974 with the approval of the Federal Home Loan Bank Board. Its signs and advertisements generally have "1st" in white letters on a square black background, then "Southern" in blue letters and "Federal" in black letters on a white background with a blue border. It has 19 offices in Alabama, including one within twenty-five miles of Pascagoula, Mississippi, where appellee has its home office. First Southern Federal of Mobile has $2.07 million in outstanding loans (.47 percent of its total) that are either made to Jackson County, Mississippi, citizens or secured by Jackson County land. It has $3.9 million in deposits (a smaller percentage of its total) from Jackson County citizens or residents. It has advertised in newspapers delivered in Jackson County and on television and radio stations broadcast into that county.

Appellee, chartered by Mississippi in 1968 under the name Twin Cities Savings & Loan Association, became insured by the Federal Savings & Loan Insurance Corp. in July 1977, and changed its name to First Southern Savings & Loan Association of Jackson County, Mississippi (First Southern of Jackson County), in October 1977 with approval of the Commissioner of the Mississippi Department of Savings Associations. Its signs and literature also have "1st" in white letters on a rectangular dark blue background, with the letters interconnected, then "FIRST SOUTHERN SAVINGS" in dark blue upper case letters on a white background with a silver border, followed by "FSLIC" and "ASSOCIATION OF JACKSON COUNTY" in much smaller dark blue letters. First Southern of Jackson County has three loans (.5 percent of its total) secured by property in Mobile County but made to residents of Jackson County. Actual confusion of the names of the two institutions has occurred on several occasions.

First Southern Federal of Mobile brought suit against First Southern of Jackson County in the Southern District of Mississippi. It alleged that the similarity of appellee's name violated Federal Home Loan Bank Board regulations, a Mississippi statute, and common law. The district court correctly found jurisdiction under 28 U.S.C.

§ 1332, but rejected alternative bases of jurisdiction. The court below found for First Southern of Jackson County on the basis that no "member of the general public . . . would likely be confused by any similarity of the two names."

## II.

■ Appellant contends that the name similarity violated 12 C.F.R. § 556.5(d) (1979), which was promulgated under the Home Owners' Loan Act of 1933 (H.O.L.A.), 12 U.S.C. § 1461 *et seq.* That regulation provides that the Federal Home Loan Bank Board "may condition its approval of an application to establish or maintain a branch office . . . within the market area of another Federal association having a name similar to the name of the parent association of such branch" by prescribing a sufficiently different name. 12 C.F.R. § 556.5(d) (1979). That regulation does not apply to appellee, because its express terms govern federally chartered savings associations whereas First Southern of Jackson County is state chartered. The regulation also governs approval of branches whereas appellant is challenging general use of the name "1st Southern." The H.O.L.A. and regulations promulgated under it do not generally apply to state chartered associations, *see Wolfson v. Artisans Savings Bank,* 428 F.Supp. 1315, 1318 (D.Del.1977), even if they are insured by the Federal Savings and Loan Insurance Corp. or are regulated in other ways, *see generally Hancock Financial Corp. v. FSLIC,* 492 F.2d 1325, 1328 (9th Cir. 1974). We agree with the district court that First Southern of Jackson County violated neither the H.O.L.A. nor the regulations promulgated thereunder.

## III.

Appellant raises a trade name issue, arguing that the appellee's name and sign are likely to be confused with its own name and sign. It contends that federal substantive law governs this trade name issue. Appellee argues that there is no substantial likelihood of confusion and that the substantive law of the state of Mississippi governs the issue.

■ The parties erroneously equate the choice of law issue with the jurisdictional basis of the litigation. The doctrine advanced in *Erie R. v. Tompkins,* 304 U.S. 64, 79, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) often is spoken of as automatically applying in cases in which jurisdiction is based on diversity of citizenship. This view is erroneous, however. The *Erie* result applies to any issue "governed by state law operating of its own force," regardless of the jurisdictional basis. P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System,* 766 (2d ed. 1973). Conversely, the *Erie* result is inapplicable to those issues effectively governed by federal law, even if jurisdiction rests solely on diversity of citizenship. *Id.*

■ As demonstrated by its progeny, *Erie* requires (1) that federal law apply in areas of exclusive federal competence, (2) that state law apply in areas of exclusive state competence, and (3) that state law apply in areas of concurrent federal-state competence unless (a) federal legislation or regulation directly addresses the precise and narrow issue of dispute or (b) the application of federal law is required to protect or to effectuate a valid and substantial federal interest or policy. *See Miree v. DeKalb County,* 433 U.S. 25, 28–33, 97 S.Ct. 2490, 2493–2495, 53 L.Ed.2d 557 (1977); *United States v. Little Lake Misere Land Co.,* 412 U.S. 580, 591–92, 93 S.Ct. 2389, 2396–2397, 37 L.Ed.2d 187 (1973); *Bank of America National Trust & Savings Association v. Parnell,* 352 U.S. 29, 33–34, 77 S.Ct. 119, 121–122, 1 L.Ed.2d 93 (1956). When, as in this case, extensive federal legislation and regulation exist in the area but do not directly address the precise and narrow issue of litigation, the pertinent analysis assesses whether there exists a valid and substantial federal interest or policy that re-

quires the application of federal law as an exercise of interstitial lawmaking to protect or to effectuate the federal scheme. When no such federal interest or policy exists, *Erie* requires that state law apply. *See Miree v. DeKalb County*, 433 U.S. at 28–29, 97 S.Ct. at 2493–2494; *Bank of America National Trust & Savings Association v. Parnell*, 352 U.S. at 33–34,[1] 77 S.Ct. at 121–122.

■ In the present case we do not perceive a valid and substantial federal interest or policy requiring the application of federal law. We are, of course, aware of the extensive federal legislation and regulation in the fields of trademarks and trade names. The state law at issue does not significantly conflict with any federal policy or interest in that area. *See Miree v. De-Kalb County*, 433 U.S. at 31, 97 S.Ct. at 2494; *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966). We also recognize that the daily banking operations of both the appellant, as a federally chartered savings and loan association, and the appellee, as a state chartered but federally insured financial institution, are subject to extensive federal regulation. None of these regulations addresses the precise issues raised here, however, and no substantial federal interest or policy compels the application of federal trade name law to the narrow issue of this trade name dispute. We therefore hold that the substantive state law of Mississippi governs this case.

A Mississippi statute prohibits issuance of a "certificate of incorporation of a proposed association having the same name as a corporation authorized to do business under the laws of this state or a name so nearly resembling it as to be likely to deceive." Miss.Code Ann. § 81–12–41 (Supp.1979). The cited statute prohibits state incorporation of a savings association under a name deceitfully similar to an existing association doing business within the state, but does not appear to provide a right of action and sanctions against a savings association once it has been incorporated under such a name.

■ Mississippi common law also prohibits infringement of trade names. *See Richardson v. Thomas*, 257 So.2d 877, 879 (Miss.1972). "The threshold question in any trade name infringement action is whether the word or phrase was initially . . . protectable." *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 115 (5th Cir. 1979) (Louisiana law). As a general rule generic and geographical names are not subject to trade name protection. *Dixie Oil Co. v. Picayune "66" Oil Co.*, 245 So.2d 839, 841 (Miss.1971) ("Dixie" not subject to protection); *Staple Cotton Cooperative Association v. Federal Staple Cotton Co-Op Association*, 249 Miss. 465, 162 So.2d 867, 869 (1964). Because "First Southern" is a combination of a generic and a geographical term, we conclude that it is not subject to protection under Mississippi common law. In addition, we believe that under the facts presented the district court was not clearly erroneous, *see Kentucky Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 368, 384 (5th Cir. 1977), in finding that appellee's name and sign were not so similar as to be reasonably calculated to deceive the public and to injure appellant, *see Staple Cotton Cooperative Association v. Federal Staple Cotton Co-Op Association*, 249 Miss. 465, 162 So.2d at 869.

AFFIRMED.

---

1. For an analysis of preemption, see Note, *A Framework for Preemption Analysis*, 88 Yale L.J. 363, 369–72, 384–87 (1978).